Case 4:21-cv-00484   Document 42   Filed on 12/21/21 in TXSD   Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
December 21, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ESTATE OF HECTOR SALAS, JR., HECTOR SALAS, SR., as representative and individually, ANDREA SILVA, individually and a/n/f for H.S. and A.S., CYNTHIA MONTIEL, a/n/f for E.S., | § § § § § § § § | |
| *Plaintiffs*, | § § | |
| v. | § | CIVIL ACTION NO. 4:21-CV-484 |
| RICHINA BICETTE, in her individual capacity, BEN TAUB HOSPITAL, and HARRIS HEALTH SYSTEM, d/b/a BEN TAUB, | § § § § § § | |
| *Defendants*. | § § | |

## ORDER

Before the Court are the Motion for Summary Judgment of Harris Health System and Ben Taub Hospital (collectively, "Harris Health") (Doc. No. 20) and the Motion for Summary Judgment of Dr. Richina Bicette (Doc. No. 17). The Plaintiffs have responded in opposition (Doc. No. 30) and both Harris Health and Dr. Richina Bicette have replied. (Doc. Nos. 31–32).

This case is one of a series of cases filed by the Estate of Hector Salas, Jr. and his heirs arising out of his suicide. Plaintiffs initially sued the City of Galena Park and various police officers in Cause No. 4:19-cv-4479, and that case was dismissed. Plaintiffs also sued Police Chief James Knox, Adrian Herrera, and Cynthia Herrera in Cause No. 4:21-cv-892, and that case is pending on appeal to the Fifth Circuit. Clearly, the Plaintiffs are seeking some recompense for the untimely death of Hector Salas, Jr. but have not yet found a viable defendant. While their search may yet prove fruitful in some other case, their claims in this case clearly lack merit.

1

I.      **Background and Conditions**

According to the general allegations in all three cases, Salas suffered from depression. His wife called the Galena Park police because he had taken "a handful of pills." (Doc. No. 9, at 2). On November 28, 2018, Salas was taken by Galena Park Fire Department ambulance to Ben Taub Hospital. While awaiting his room assignment, Salas apparently discharged himself. The next day Salas's wife again called the police because he was suicidal. This time he was taken to jail and put on suicide watch. According to the allegations, while incarcerated he unsuccessfully attempted suicide twice with no intervention but was eventually successful on November 30, 2018. He died while in custody. It is the events that occurred while in Ben Taub, two days before his death, that are at issue here.

Salas arrived at Ben Taub Hospital at 3:45 in the morning. Ben Taub is a county hospital owned by the Harris (County) Health System. It is staffed by doctors, residents, and students provided by the Baylor College of Medicine. The medical records indicate that the medical personnel were told that Salas had ingested an unknown quantity of Excedrin, Advil, and Xanax. (Doc. No. 18-1, at 7). Ten minutes later Dr. Richina Bicette ("Dr. Bicette") performed a medical examination, after which Salas was told that they were going to run tests and admit him once a bed became available. (*Id.* at 8). Over the next few hours, various tests were performed, and his vital signs were monitored. Finally, a bed became available, but at that time the staff at Ben Taub could not locate Salas. The Plaintiffs claim that Salas was discharged by Defendants. Defendants claim Salas discharged himself by leaving. Regardless, he obviously made his way back home because Plaintiffs allege that is where he was when his wife called the police the next day on November 29, 2018. One day later, while in the custody of the Galena Park jail, Salas committed suicide.

Plaintiffs clearly feel that the City of Galena Park and its jail personnel are the primary responsible parties. In fact, even in their response to the current motions, they state "Plaintiffs themselves place the blame for Salas's death squarely on the City of Galena Park." (Doc. No. 30, at 14). Unfortunately for them, their case against Galena Park was dismissed because they failed to state a claim.

In this case, Plaintiffs allege medical negligence (malpractice) against both Harris Health and Dr. Bicette. Specifically, they allege that Dr. Bicette was negligent because she failed to: (1) properly discharge Salas, (2) perform an appropriate evaluation, (3) refer Salas to a specialist, and (4) place Salas on a 48-hour "hold to protect." (Doc. No. 30, at 2). Plaintiffs also allege that in 2017 a prisoner in the Harris County jail committed suicide "within hours of his discharge" from Ben Taub. (*Id.* at 15). They also allege that in 2019 a patient died from cardiac arrest in the Ben Taub emergency room. (*Id.*). Based upon these incidents, Plaintiffs plead that Ben Taub failed to implement suicide prevention policies (e.g., failure to protect).[1]

Plaintiffs also plead that Defendants violated the Americans with Disabilities Act (ADA) and § 504 of the Rehabilitation Act by failing to make reasonable accommodations for Salas. (*Id.* at 15–16.).

Perhaps knowing that their complaint was not timely filed, they attempt to forestall such defense by pleading that their causes of action were tolled because November 28, 2020, two years after the treatment, fell on a Saturday. They argue that the statute of limitations did not expire until the next business day, which was Monday, November 30, 2020. (*Id.* at 6–7).

Finally, the Amended Complaint makes passing references to the claims arising under 42 U.S.C. § 1983 (*see* Doc. No. 9, at ¶¶ 38 and 102), but these references are clearly insufficient to

---

[1] The Court notes that two deaths at a hospital for two different reasons over a three-year period alone do not raise a fact issue on any topic or issue or policy.

3

constitute § 1983 claims. This Court will, nonetheless, discuss these claims (such as they are), but this discussion should not be interpreted in any way suggesting that this Court finds these references to adequately set out a claim.

Defendants move for summary judgment on similar grounds. Dr. Bicette claims that: (1) the malpractice claims are barred by the applicable statute of limitations, (2) Plaintiffs as a matter of law have no ADA (or § 504) claims as to Bicette, (3) there is no merit to any so-called § 1983 claims and, (4) she has immunity. Harris Health likewise contends that: (1) all malpractice claims are barred by the statute of limitations, (2) it has sovereign immunity for the state law claims, and (3) the § 1983 claims are without merit as are the ADA and § 504 claims.

## II. Summary Judgment Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). Once a movant submits a properly supported motion, the burden shifts to the nonmovant to show that the Court should not grant the motion. *Celotex Corp.*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255.

4

### III. The Healthcare Liability Claims Are Barred by the Applicable Statute of Limitations

Texas law in medical malpractice cases is governed by statute and has also been widely discussed in caselaw. The controlling statute could not be clearer:

> *Notwithstanding any other law* and subject to Subsection (b), no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed . . . .

TEX. CIV. PRAC. & REM. CODE § 74.251(a) (emphasis added). The statute begins to run at the time of the treatment over which there is a claim or from the date of hospitalization for which the claim is made. In this case that date is November 28, 2018. Therefore, all claims must have been filed by November 28, 2020. This case was not filed until November 30, 2020. Thus, all medical malpractice claims are barred.

Plaintiffs' arguments that their claims are somehow tolled are completely misplaced. Section 74.251 controls over all other laws given its predicate of "[n]otwithstanding any other laws." *See, e.g.*, *Molinet v. Kimbrell*, 356 S.W.3d 407, 415–16 (Tex. 2011); *Mena v. Lenz*, 349 S.W.3d 650, 655–56 (Tex. App.—Corpus Christi–Edinburg 2011, no pet.). This would include controlling over all tolling provisions established by the Texas Rules of Civil Procedure, caselaw, or even other Texas statutory provisions. This would also therefore preclude the Plaintiffs' reliance on the Texas Rules of Civil Procedure.

Plaintiffs, while nominally contesting the fact that their claims are barred by limitations, make an almost startling concession. In their response to the summary judgment motions, they state:

> The statute of limitations for both ADA and § 1983 claims is two years. *Winfrey v. Rogers*, 901 F.3d 483, 492 (5th Cir. 2018); *Frame v. City of Arlington*, 65 F.3d 215, 237 (5th Cir. 2011). State statutes of limitation also bar Plaintiffs' state-law claims.

5

> In Texas, a health care liability claim expires two years after the cause of action accrue.

(Doc. No. 30, at 9).

Thus, even the Plaintiffs agree that, without some exception, their malpractice claims are barred. The Court finds no exception exists and their malpractice claims are barred by the statute of limitations.

**IV.    The Remaining State Law Claims Are Barred by Immunity**

Both Dr. Bicette (as a Baylor employee working at Ben Taub) and Ben Taub (as part of the county health system) have claimed immunity to all state law claims. Baylor doctors working at Ben Taub are considered state employees and thus are protected by § 101.106 of the Texas Civil Practice and Remedies Code (the "Texas Tort Claims Act"). *See Klein v. Hernandez*, 315 S.W.3d 1, 8 (Tex. 2010); *Zimmerman v. Anaya*, 2011 WL 1234685, at *3 (Tex. App.—Houston [1st Dist.] March 31, 2011, pet. denied).

Ben Taub claims that it is protected by sovereign immunity because it is a unit of a local governmental entity. TEX. CONST. art. IX § 4; TEX. HEALTH & SAFETY CODE § 28.1002. As such, Ben Taub has immunity from common law tort claims. *Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842–43 (Tex. 2009). While the Texas Tort Claims Act waives immunity for injuries caused by a condition or use of tangible personal or real property (*see* TEX. CIV. PRAC. & REM. CODE § 101.021(2)), no such claim has been made herein.

Moreover, in their response to the Defendants' motions, Plaintiffs made no attempt to address the immunity claim of the Defendants. Therefore, the Plaintiffs have waived this issue. *See Salek v. SunTrust Mortg., Inc.*, 812 F. App'x 171, 175 (5th Cir. 2020) (per curiam) (failure to raise argument in summary judgment response constitutes forfeiture).

V.  **The § 1983 Claims Are Also Insufficient**

As stated earlier, Plaintiffs make a haphazard attempt to cast their malpractice claims under the guise of a claim pursuant to 42 U.S.C. § 1983. It has long been the law in this Circuit that medical negligence/malpractice claims cannot be the basis of liability under § 1983. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

The reasoning behind this is clear. Section 1983 provides a pathway to address claims based upon a deprivation of rights secured by the United States Constitution or federal law. *Manuel v. City of Joliet*, 137 S. Ct. 911, 916 (2017). It is not a source of substantive rights. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). A plaintiff must prove that: (1) the conduct was committed by a defendant acting under color of state law; and (2) the conduct deprived the plaintiff of a right secured by the Constitution or law of the United States. *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004). A common law claim (or even state statutory claim) for redress for improper medical care does not satisfy the second prong.

The Court must also note that actions under § 1983 require some action under color of law. Plaintiffs, in their response to the summary judgment, concede that "Salas was not emergently detained by police." (Doc. No. 30, at 14). This admission is in line with the uncontroverted evidence in the medical records that he arrived by ambulance and his patient status was voluntary. (Doc. No. 18-1, at 6, 10). Plaintiffs also concede that "Salas was *not* in the state's custody when Dr. Bicette saw him at Ben Taub." (Doc. No. 30, at 18) (emphasis in original). This in effect extinguishes any argument that there was untoward conduct committed under color of state law or action.

The Court grants summary judgment as to any and all § 1983 claims.

7

## VI. The ADA and Rehabilitation Act Claims Are Meritless[2]

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act reads similarly. *See* 29 U.S.C. § 794. In fact, courts have traditionally applied the same interpretations to both. *See Kemp v. Holder*, 610 F.3d 231, 234–35 (5th Cir. 2010). To succeed on a Title II discrimination claim, a plaintiff must show that: (1) he has a qualifying disability; (2) he has been denied the benefits of services, programs, or activities for which the public entity is responsible, or was otherwise discriminated against by the public entity; and (3) he was discriminated against by reason of his disability. *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (per curiam). Element (3) requires a showing of intentional discrimination. *Delano–Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir. 2002). To succeed on the related-yet-distinct theory of failure to accommodate, "a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015) (citing *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013)).

Plaintiffs' theory, unsupported by any competent summary judgment evidence, is that the Defendants failed to treat Salas and/or failed to take him into custody because he was mentally unstable. First, neither the ADA nor the Rehabilitation Act provide causes of action for medical

---

[2] Plaintiffs in their response to Dr. Bicette's Motion for Summary Judgment make no attempt to argue, suggest, or raise a fact issue to the effect that she is liable under either Act. Arguably they have not even pleaded such claims against Dr. Bicette. Therefore, they have waived this claim as to Dr. Bicette. The Court will, nonetheless, analyze the purported liability under these acts as if they were pleaded against both Harris Health and Dr. Bicette.

8

malpractice. *Fitzgerald v. Corrections Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005). Plaintiffs have not cited this Court to any case in this or other circuits that hold otherwise.

Second, Plaintiffs have not referred this Court to any authority that would allow Dr. Bicette or Ben Taub to put Salas into custody. In fact, the few cases that have addressed this situation demonstrate that the Defendants could be held liable under the ADA if they had done what the Plaintiffs now suggest. *See, e.g., Lupi v. Diven*, 2020 WL 6324396, at *11–12 (W.D. Tex. Oct. 27, 2020).

Finally, Plaintiffs have no summary judgment evidence to support either claim. The only summary judgment evidence establishes the following facts. Mr. Salas arrived at the Ben Taub Emergency Center by ambulance on November 28, 2018 at 3:45 a.m. (Doc. No. 18-1, at 6). Nurse Noelle Lindsey Junco triaged him at 3:46 a.m., and he reported having taken Excedrin, Advil, and Xanax. (*Id.* at 7). Nurse Junco notified Dr. Bicette, the attending physician. Mr. Salas's legal status was documented as "voluntary" (a patient's status is documented as "involuntary" when he or she is in police custody or is not free to leave of his or her own accord):

| 03:59 | **Legal Status** | **Legal Situation**<br>**Legal Status: Voluntary** | Junco, Noelle<br>Lindsey, RN |
|---|---|---|---|

(*Id.* at 10).

Dr. Bicette is an Assistant Professor in the Department of Emergency Medicine at Baylor School of Medicine and an employee of Baylor. (Doc. No. 17-1, at ¶ 6). She performed a medical screening exam of Salas at 3:55 a.m. (Doc. No. 18-1, at 7). Salas confirmed that he took the medications in a suicide attempt. (*Id.* at 8). Dr. Bicette noted that his vital signs were stable on arrival. (*Id.* at 11). She ordered lab work and an EKG, which were performed, and determined that further evaluation would be necessary to determine if Salas had a medical condition that required attention. (*Id.*). She did not discharge Salas during this encounter. (Doc. No. 18-3, at ¶ 8).

9

Salas's vital signs were taken at 7:40 a.m. (Doc. No. 18-1, at 15). He had not yet been assigned to a bed, but his health was being monitored. Salas's name was called at 11:34 a.m. for a vital signs check, but he did not answer. (*Id.*; Doc. No. 18-2, at ¶ 9). Once his room was ready, Nurse Rachelle Rukiya Middleton called Salas's name three more times, but he did not answer. (Doc. No. 18-1, at 15; Doc. No. 18-2, at ¶ 9). His disposition status was changed to "LBTC" at 1:13 p.m. on November 28, 2018, meaning that he left Ben Taub before his treatment was complete. (Doc. No. 18-1, at 15).

| 13:13:14 | LBTC Dispo | ED Disposition set to LBTC | Middleton, Rukiya Rachelle, RN |
|---|---|---|---|

The uncontroverted summary judgment evidence establishes that Salas was given appropriate care and that Salas was not discharged by Dr. Bicette or anyone connected to Ben Taub, and he was not seen by Dr. Bicette or by anyone at Ben Taub after this day. *See* (Doc. No. 18-3, at ¶¶ 7–8).

Plaintiffs' entire argument is that Salas was wrongly "discharged" to home. To support this claim, they submit only an unsworn supplemental report by Texas Ranger Daron Parker ("Ranger Parker") which states "[t]he chart indicated that Salas was discharged on 11-28-2018, at 1:13 pm. The discharge destination was listed as 'home.'" (Doc. No. 30-1, at 1). Ranger Parker attached some of the medical records to his report. (*Id.* at 4–16).

There are many problems with this. First, it is an unsworn report that Plaintiffs merely attached to their response. Second, the entire document is full of hearsay within hearsay and no suggestion has been made as to how to avoid this problem. Third, Ranger Parker, while probably an excellent law enforcement officer, has not been qualified to read and interpret medical records and Plaintiffs have made no effort to show that he is so qualified. Finally, the records that were attached to the supplemental report and provided by the Plaintiffs to the Court do not say what

10

Ranger Parker says they say. The following is the entire 1:13 p.m. entry that Plaintiffs attached from November 28, 2018:

```
Current Discharge Medication List
Medication list as of: 11/28/2018 1:13 PM
There are no discharge medications for this patient.

For your health, it is important to:
1. Bring all your medications to each visit, hospital or clinic.
2. Inform your doctor, nurse, or pharmacist regarding ANY medication changes.
```

| Pt Belongings | | | |
|---|---|---|---|
| Patient Belongings Flowsheet | | | |
| VALUABLES | | Jewelry | — |
| OR Valuables | — | Jewelry Given To: | — |
| Patient / Family / S.O. encouraged to take valuables home | — | Clothing | — |
| Dentures / Oral Appliances | — | Clothing Given To: | — |
| Dentures Given To: | — | Other Valuables | — |
| Vision Aids | — | Valuables Given To | — |
| Vision Aids Given To: | — | If given to family, provide name(s): | — |
| Hearing Aid | — | Responsible person(s) in the waiting room? | — |
| Hearing Aids Given To: | — | | |

*Patient Signature: _____ Date: _____

**Encounter-Level Documents:**
There are no encounter-level documents

(Doc. No. 30-1, at 16).

Thirteen pages of medical records are attached to the copy of Ranger Parker's supplemental report provided by the Plaintiffs. The records produced by the actual custodian of Ben Taub's medical records number 27 pages. (Doc. No. 18-1, at 3–29). This Court does not know if Ranger Parker failed to retrieve all of the records or if the Plaintiffs did not include all of them in their submission. The answer to that question is not important to the ultimate outcome of the case, but it does serve to illustrate why unsworn pleadings and unproven records are unreliable and why courts should insist on compliance with the applicable rules.

There are some important records that are not contained in Plaintiffs' response. First, there is a record which supports Ranger Parker's statement about the time of "discharge" and Salas's destination, *see* (Doc. No. 18-1, at 6), but it also states that there is no discharge provider. The

Emergency Department care timeline which demonstrates that Salas left the hospital without the knowledge of the staff and without medical authorization is also omitted from those records attached to Plaintiffs' response:

**11/28/2018 - ED in Emergency Center BT (continued)**

**ED Care Timeline (continued)**

| Time | Event | Details | Staff |
|---|---|---|---|
| 07:40 | Complex Vital Signs | Other flowsheet entries<br>Restart Vitals Timer: Yes | Roberts, Lolita K |
| 07:40 | Triage Vitals | Triage Vitals<br>Temp: 98.1 °F (36.7 °C)<br>BP: 129/79<br>Pulse: 96<br>Resp: 18<br>SpO2: 98 % | Roberts, Lolita K |
| 07:40 | Custom Formula Data | Other flowsheet entries<br>Duration of Labor: 0 hr 0 min | Roberts, Lolita K |
| 08:25:31 | ED Notes | **Andrea Salas**<br>**832-988-5694** | Middleton, Rukiya Rachelle, RN |
| 11:34 | Triage/Room Call | Other flowsheet entries<br>Triage Call: Call 1x (DNA for vitals ) | Long, Tiffany Marie |
| 11:34 | Triage Vitals | Triage Vitals<br>BP: (DNA for vitals ) | Long, Tiffany Marie |
| 11:34:03 | Ready to be Hospitalized | | Long, Tiffany Marie |
| 13:12 | Triage/Room Call | Other flowsheet entries<br>Triage Call: Call 3x (DNA) | Middleton, Rukiya Rachelle, RN |
| 13:13 | Patient dismissed | | Middleton, Rukiya Rachelle, RN |
| 13:13:01 | Discharge Disposition Selected | ED Disposition set to Discharged | Middleton, Rukiya Rachelle, RN |
| 13:13:01 | Disposition Selected | | Middleton, Rukiya Rachelle, RN |
| 13:13:14 | LBTC Dispo | ED Disposition set to LBTC | Middleton, Rukiya Rachelle, RN |
| 13:13:14 | Disposition Selected | | Middleton, Rukiya Rachelle, RN |

(Doc. No. 18-1, at 15).

This record, which is properly proven, supports the medical affidavits that establish in an uncontroverted fashion that, starting at 11:34 a.m., staff called Salas and he did not answer (DNA) when called for his "vitals." This was repeated again at that same time and then at 1:12 p.m. he was called three different times because his room was ready. He did not answer then either (because he had presumably left the hospital). Regardless of why he did not answer, the doctors and hospital staff finally changed his status to "LBTC"—left before treatment completed.

12

There is absolutely no evidence that the Defendants committed any substandard act or made any substandard omission. There is no evidence that they proximately caused any damage or injury to Salas. There is no evidence that they committed any act which violated the ADA, the Rehabilitation Act, or § 1983. Under *Celotex*, the burden is on the Plaintiffs to raise a fact issue, *see* 477 U.S. at 321–25, and their response fails to do so. In fact, their response is so meager that it raises the specter that this case was brought in bad faith. This Court need not resolve that issue at this juncture.

In their response, Plaintiffs purport to object to certain summary judgment evidence included by both movants. (Doc. No. 30, at 5–6). These objections are apparently directed at various affidavits, medical records, and even records of this Court. No basis has been given for these "objections." No argument has been made and there has been no suggestion why any objection should be granted or even addressed. These objections are patently insufficient and are overruled.

## VII. Conclusion

The Court grants the Motion for Summary Judgment of Dr. Richina Bicette (Doc. No. 17) and the Motion for Summary Judgment of Ben Taub Hospital and Harris Health System, d/b/a Ben Taub (Doc. No. 20).

SIGNED at Houston, Texas this 21st day of December, 2021.

Andrew S. Hanen
United States District Judge